## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IGNATIUS WEAVER** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 04-1642** |
| **N. BURL CAIN WARDEN** | * | **SECTION: "K"(6)** |

### SECOND REPORT AND RECOMMENDATION

On June 3, 2005, the District Court issued an Order and Reasons recommitting this matter to the Magistrate Judge for further consideration.[1]  The District Court found merit in Ignatius Weaver's Objection to the Magistrate Judge's Report and Recommendation that Weaver's petition be dismissed as untimely filed.  Accordingly, the merits of Weaver's petition will be addressed.

This matter was referred to the United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to Title 28, United States

---

[1]See Fed. Record, Doc. No. 9, Order and Reasons.

Code, Sections 636(b)(1)(B) and (C), and, as applicable, Rule 8(b) of the Rules Governing

Section 2254 cases.  Upon review of the entire record, the Court has determined that this

matter can be disposed of without an evidentiary hearing.  For the reasons set forth below,

it is recommended that the instant petition be **DENIED.**

## <u>Procedural History</u>

Petitioner Ignatius Weaver is a state prisoner presently incarcerated in the

Louisiana State Penitentiary, Angola, Louisiana.  On March 22, 1999,  petitioner was

convicted after a jury trial of one count of armed robbery, in the Orleans Parish Criminal

District Court.  On June 21, 1999, petitioner was adjudicated to be a second felony offender

and was sentenced to serve 49 ½ years of incarceration at hard labor without benefit of

parole, probation or suspension of sentence pursuant to La. R.S. 15:529.1.[2]  Petitioner

directly appealed his conviction and sentence to the Louisiana Court of Appeal, Fourth

Circuit on October 28, 1999.  The Fourth Circuit affirmed the case on September 27, 2000.[3]

Thereafter, petitioner filed an application for a writ of certiorari and/or review in the

---

[2]See State Record, Vol. 1 of 4, Docket Master, Entry dated 06/21/99, **State v. Weaver**, No. 400-680, "I", Orleans Parish Criminal District Court, State of Louisiana.

[3]**State v. Weaver**, 770 So.2d 831 (La. App. 4th Cir. 9/27/00).  The following issues were raised:  (1) prosecutor harassed defense witnesses; (2) insufficiency of evidence regarding second felony offender adjudication; (3) illegal sentence as trial court failed to comply with La. C.Cr. P. art. 894.1; (4) excessive sentence; and, (5) ineffective assistance of counsel.

Louisiana Supreme Court on October 27, 2000, based upon the same issues raised in the Fourth Circuit.  The Louisiana Supreme Court denied the writ application on October 26, 2001.[4]  Petitioner did not file for certiorari in the United States Supreme Court, therefore, under state law, petitioner's conviction became final on November 9, 2001, fourteen days after the Louisiana Supreme Court denied the writ.  (See La. C.Cr. P. art. 922.)

Petitioner filed his first and only application for post conviction relief (PCR) in the state district court on December 23, 2002, therein claiming that his attorney provided ineffective representation because counsel failed to investigate and locate crucial material witnesses for his trial.[5]  On January 10, 2003, the district court issued a judgment denying the PCR application on the merits and pursuant to La. C.Cr. P. art. 930.4.[6]  Petitioner filed a writ for review in the Louisiana Court of Appeal, Fourth Circuit on March 5, 2003.  The writ was denied on April 8, 2003.  The Fourth Circuit said:

> Although the district court erred in finding relator's claim was barred by La. C. Cr. P. art. 930.4, the court also considered the merits of the claim.   This Court has reviewed relator's

---

[4]**State v. Weaver,** 799 So.2d 1147 (La. 10/26/01).

[5]See State Record, Vol. 1 of 4, for copy of PCR.

[6]See State Record, Vol. 1 of 4, for copy of the court's Judgment dated January 29, 2003.

3

application for post conviction relief and finds no error in the
district court's judgment.[7]

Petitioner filed an application for a writ of review in the Louisiana Supreme Court on May

7, 2003.[8]  This was the date petitioner submitted his application for writ of review to prison

officials for mailing rather than the date (May 22, 2003) the petition was received by the

court.  The application was denied on April 23, 2004.[9]

On April 27, 2004, petitioner filed the subject federal petition for habeas corpus

relief , which is the date he signed the declaration of his federal petition.[10]  Petitioner raised

the  following  four  claims:   (1)  ineffective  assistance  of  counsel;  (2)  prosecutorial

---

[7]See State Record, Vol. 3 of 4, for copy of ruling in **State v. Weaver**, No. 2003-K-457
(La. App. 4th Cir. April 8, 2003).

[8]This May 7, 2003, filing date was determined by the court's application of the principles
of equitable tolling.  See Federal Rec., Doc. 9, Order and Reasons, pages 8-9.  Also see **Causey
v. Cain,** 450 F.3d 601 (5th Cir. 2006), where the U.S. Court of Appeals Fifth Circuit recognized
the mail box rule as applied by Louisiana Courts regarding indigent inmates.

[9]See **State ex rel. Ignatius Weaver v. State of Louisiana**, 870 So.2d 292 (La. App. 4th
Cir. 4/23/04)(No. 03-KH-1436).

[10] Under the federal "mailbox  rule" employed by this Court, a pleading filed by a
prisoner acting pro se is considered to be filed, for prescriptive purposes, on the date it is
delivered to prison officials for mailing, rather than the date it is received by the court.  **Cooper
v. Brookshire**, 70 F.3d 377, 379 (5th Cir. 1995).  If no evidence exists as to the date the petition
was delivered to prison officials, the date the petitioner signed his habeas application is
considered to be the filing date for purposes of determining the timeliness of the matter.  *See*
**Colarte v. LeBlanc**, 40 F.Supp.2d 816, 817 (E.D. La. 1999); **Magee v. Cain**, 2000 WL
1023423, *4 n.2 (E.D. La. 2000); **Punch v. State**, 1999 WL 56279, *2 n.3 (E.D. La. 1999).

misconduct; (3) insufficiency of evidence regarding second felony offender adjudication; and, (4) excessive sentence.  The State filed a response on August 12, 2004.[11]  The State failed to address whether or not petitioner had exhausted his state court remedies as required under **Rose v. Lundy**, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).  However, pursuant to its independent investigation, the court has ascertained that the claims raised in the instant matter were raised before the state's highest court, the Louisiana Supreme Court, in connection with petitioner's direct appeal and post conviction proceedings.  Thus, petitioner has satisfied his exhaustion requirement.

Accordingly, the merits of petitioner's federal claims will be addressed.

### Statement of Case[12]

On August 14, 1998, defendant was charged with two counts of armed robbery. Ms. Keisha Johnson was the victim. On February 1, 1999, the State amended the bill of information to change the second count to first degree robbery. On February 25, 1999, a twelve-member jury found defendant not guilty on Count 2, but was hung as to Count 1. Defendant was retried on Count 1 on March 22, 1999, and was found guilty as charged by

---

[11]See Fed. Record, No. 5, Response to Habeas Corpus Petition.

[12]The Statement of the Case was taken from the published opinion of the Louisiana Court of Appeal, Fourth Circuit, **State of Louisiana v. Ignatius Weaver,** 770 So.2d 831, 832 (La. App. 4th Cir., Sept. 27, 2000).

a twelve-member jury. Defendant filed a motion for new trial that was denied on May 21, 1999. On June 21, 1999, the trial court found defendant to be a second offender pursuant to a multiple bill filed by the State. Defendant was sentenced to forty-nine and one-half years at hard labor without benefit of parole, probation or suspension of sentence.

### Statement of Facts[13]

Officer Clarence Mitchell testified that in the course of investigating a "miscellaneous case" in 1998, he searched the home of defendant and his wife, Robinette Robinson, where he found a suitcase that contained pawn tickets and a newspaper clipping describing the June 4th Johnson robbery. He noted that one ticket described "a whole bunch of jewelry" and bore the signature, "Ignatius Weaver."

Officer Mitchell then returned to the Sixth District Station where he learned that the jewelry listed on the pawn tickets matched the description of the jewelry Ms. Johnson said had been stolen from her in the June 4th robbery. Officer Mitchell testified that he was able to recover most of Ms. Johnson's stolen property from the pawn shop. Officer Mitchell visited Ms. Johnson at her residence to show her a color photo-lineup, and she chose defendant's picture.

---

[13]The Statement of Facts was taken from the published opinion of the Louisiana Court of Appeal, Fourth Circuit, **State of Louisiana v. Ignatius Weaver,** 770 So.2d 831, 832-834, (La. App. 4th Cir., Sept. 27, 2000)(Footnote omitted).

Ms. Keisha Johnson testified that on the afternoon of June 4, 1998, she and her five year old niece got off the bus at Louisiana and Annunciation and that there was a man behind them as they walked. Ms. Johnson stated that the man came over to her, put a gun to her head, and tried to remove her chain which would not come off. He continued to hold the gun on her as she removed her jewelry, and she said that he walked and then ran from the scene. She stated that the robber wore a black shirt and blue jean shorts. She chose defendant's picture out of a photographic lineup; and, she testified that a week after the robbery, she saw defendant at the house across the street from her. She further testified that she told the neighbor at whose house she saw defendant that he was the man who robbed her. She said that the neighbor told her that defendant was buying a car from him and that he would talk to defendant about the robbery.

Michael North testified that he was playing basketball with defendant on the afternoon of June 4, 1998 at Shakespeare Park. He further stated that defendant had his children with him, and North said that he remembered the date because it was the day that the swimming pool opened.

Johnny Seymour testified that he was also playing basketball with defendant on the afternoon of June 4, 1998. He further testified that defendant was with his brother, two

other men, and his two sons. He admitted that he could not remember on which team defendant played.

John Lacen testified that he went to the park on the afternoon of June 4, 1998, where he saw defendant and spoke with him. He further testified that he knew that one of the sons of defendant had a birthday on June 3 and that he had promised him some crawfish. He said that he left the park at 4:00 p.m.

Carolyn Smith testified that defendant was an in-house patient at the Christian Community drug treatment center from June 17 to June 27, 1998.

Everett Harris, who was also known as Al, testified that he knew both defendant and Keisha Johnson, a neighbor. He stated that Ms. Johnson came over to his house to tell him that the person who had come to his house had robbed her. Harris testified that defendant had not come to his house that day and that the person that Ms. Johnson claimed was the robber was a rapper named Goldamine who wanted to buy a car. He further testified that Goldamine looked very much like defendant. Harris also stated that to his knowledge, defendant had not been at his house on the day that Ms. Johnson said that she had seen defendant there.

Sylvia Bridgewater, defendant's mother, testified that defendant clipped out the newspaper article about the robbery that was found in the suitcase because she had been

robbed in the same area. She further testified that the defendant had always clipped articles

out of the newspaper. Ms. Bridgewater stated that pawn slips in his name could have been

for others because people would have him pawn items for them since he had an I.D.:

> Q.  Do you have any knowledge as to why Ignatius Weaver had
> the pawn slips for various things?
>
> A.  Because Ignatius pawns everything for everybody because
> he has to sign.  Anybody could come.  Ignatius is a person
> where he just don't know how to say no.  If somebody come up
> and ask him or give him a sad story, you know, about helping
> them - that's just the kind of person he is.
>
> Q.  And so he had credentials or whatever the pawn shop needs?
> what do they need?
>
> A.  An I.D.
>
> Q.  How long has he done that?
> A.  Quite a while.  He's done pawn a T.V. for my daughter.  He
> even bought a car for my daughter with his I.D.

Ms. Bridgewater's testimony never makes any specific reference to the

particular pawn ticket covering Ms. Johnson's stolen jewelry. Nor did she claim to have

knowledge of who that pawn ticket might belong to if not her son.

She further stated that defendant always had his children with him after 2:30

p.m. when he left his job at Tasty Donuts and the children got out of school.

Robinette Weaver, defendant's wife, testified that defendant would pawn items

9

in the house if money were short and that he would pawn things for others because he had an I.D. She did not testify that the pawn slip in question was for items that Ignatius had pawned for a third party. She did not testify that she knew of any third party for whom Ignatius obtained the pawn ticket in question. She testified that she had never seen him with a gun in the house.

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  **Hill v. Johnson**, 210 F.3d 481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the

10

> "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

**Williams v. Taylor**, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); **Hill**, 210 F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Hill**, 210 F.3d at 485, quoting 28 U.S.C.§ 2254(d)(2).

### Ineffective Assistance of Counsel

Petitioner claims that his right to a fair trial as guaranteed by the 6th and 14th Amendments of the United States Constitution was denied because his counsel was ineffective as he failed to investigate and to locate material witnesses, Dedra Dixon and Michelle Brown.  Petitioner claims Dixon and Brown would have confirmed his innocence and alibi, as they would have testified that someone other than petitioner robbed the victim.

In **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A convicted defendant seeking relief must demonstrate that counsel's performance was deficient <u>and</u> that the deficient performance prejudiced his defense.  <u>See</u> **Strickland,** 466 U.S. at 697, 104 S.Ct. at 2069.  If this Court finds that

petitioner has made an insufficient showing as to either of these two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  **Id.**

Petitioner carries the burden of proof and must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See **Crockett v. McCotter,** 796 F.2d 787, 791 (5th Cir. 1986); **Mattheson v. King,** 751 F.2d 1432, 1441 (5th Cir. 1985).  Under the deficient performance prong of the **Strickland** test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" **Lockhart v. Fretwell,** 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993)(quoting **Strickland,** 466 U.S. at 690, 104 S.Ct. at 2066).  "An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonably." **United States v. Acklen,** 47 F.3d 739, 742 (5th Cir. 1995).  Petitioner must prove that the conduct of counsel fell below the constitutional minimum guaranteed by the Sixth Amendment.  See **Styron v. Johnson,** 262 F.3d 438, 450 (5th Cir. 2001), cert. denied, 534 U.S. 1163, 122 S.Ct. 1175, 152 L.Ed.2d 118 (2002). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See **Strickland,** 466 U.S. at 689, 104 S.Ct. at 2065. A claim of ineffective assistance of counsel is a mixed question of law and fact.  **Moore v.**

**Cockrell,** 313 F.3d 880, 881 (5th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 969, 123 S.Ct. 1768, 155 L.Ed.2d 526 (2003).

Petitioner argues that his counsel was ineffective because he failed to locate and investigate Dedra Dixon and Michelle Brown.   The affidavit of Michelle Brown dated April 14, 1999, attached to the federal petition reads as follows, in pertinent part:

> I, Michelle Brown, resides at 7844 Sun Street, New Orleans, Louisiana.  My date of birth is December 12, 1965.
>
> That I am the witness in the State of Louisiana v. Egnatius Weaver, Criminal District Court for the Parish of Orleans.
>
> To my personal knowledge the defendant, Egnatius Weaver, did not commit armed robbery against Keisha Johnson.  On June 4, 1998, I standing Annunciation Street and Louisiana Avenue waiting at the bus stop, when I witnessed the incident of Sean Jackson robbing Keisha Johnson.
>
> Aforementioned statement is true and correct to the best of my knowledge.

Petitioner did not present an affidavit for Dedra Dixon.  However, petitioner claims that his mother Ms. Sylvia Bridgewater went into the neighborhood and discovered Dixon and Brown.  Review of the trial testimony of Ms. Bridgewater fails to show that she

told petitioner or his attorney about the witnesses prior to the trial.[14]  Ms. Bridgewater

provided no testimony nor an affidavit in support of this claim.

Review of the state record shows that the district court denied this claim on

post conviction relief (PCR) on January 29, 2003, on the merits and also as barred pursuant

to La. C.Cr. P. art. 930.4.  The district court said in pertinent part:

> In his application, Weaver contends that trial counsel was
> ineffective for failing to interview witnesses and otherwise
> investigate the facts of the case.  An ineffective assistance claim
> is assessed by the two prong test established in **Strickland v.
> Washington,** 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d 674
> (1984).   First, the defendant must show that counsel's
> performance was deficient, i.e. that he made mistakes so serious
> that he was not functioning as the counsel guaranteed to a
> defendant by the Sixth Amendment.  Secondly, one must show
> that the deficiency prejudiced him.  This showing can only be
> made if the defendant can show that "there is a reasonable
> probability that, but for counsel's unprofessional errors, the
> result of the proceeding would have been different." **Id.** At 693,
> 104 S.Ct. 2068.   Mr. Weaver was represented by an
> accomplished and experienced trial attorney.  This Court does
> not agree that the alleged failure described by Mr. Weaver was
> a mistake so serious as to meet that standard.  Nor does this
> Court believe that had those witnesses been presented to the jury
> a different result would ultimately have been obtained.

See State Record, Vol. 1 of 4, for copy of Judgment dated Jan. 29, 2003. **State of Louisiana
v. Ignatius Weaver,** No. 400-680 "I", Criminal District Court Parish of Orleans.

---

[14]See State Record, Vol. 2 of 4, Trial Transcript, pages 204-215, (March 22, 2006).

The Louisiana Court of Appeal, Fourth Circuit denied writs and noted that the district court erred in finding relator's claim was barred by La. C.Cr. P. art. 930.4, the Court considered the merits of the claim. Therefore, the Fourth Circuit reviewed the application for PCR relief and found no error in the district court's judgment denying the application on the merits.[15]

The Louisiana Supreme Court denied writs on April 23, 2004.[16]

The failure to contact or call witnesses is not per se prejudicial to the point of warranting habeas relief. See **Buckelew v. United States,** 575 F.2d 515, 521 (5th Cir. 1978) ("complains of uncalled witnesses are not favored [in federal habeas review] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative"). In **Alexander v. McCotter,** 775 F.2d 595, 602 (5th Cir. 1985), the Fifth Circuit noted that for a petitioner to show prejudice under **Strickland,** he must show that the testimony of the witnesses would have been favorable and that the witnesses would have testified at trial. Petitioner must show a reasonable probability that the uncalled witnesses would have made a difference in the result.

---

[15]See State Record , Vol. 1 of 4 for a copy of the ruling. **State v. Weaver,** No. 2003-K-0457 (La. App. 4th Cir. April 8, 2003).

[16]See State Record, Vol. 1 of 4 for a copy of the ruling. **State ex rel. Ignatius Weaver v. State of Louisiana,** No. 2003-KH-1436 (La. April 23, 2004).

**Alexander,** 775 F.2d at 603.  There is a strong presumption that the failure of petitioner's counsel to call witnesses is a strategic choice.  **Strickland,** 466 U.S. at 689-90, 104 S.Ct. at 2065-66 (1984).

This court, like the state courts before it,  has considered the victim's positive, unwavering identification of the petitioner as the person who robbed her and the fact that the victim's property had been pawned under the petitioner's name.  The court has also considered the fact that the "alibi" testimony of witnesses Michael North, Johnny Seymour, John Lacen and the testimony of Everett Harris, who testified that the robber of the victim was named "Goldamine" and not petitioner, was apparently rejected by the jury.  Therefore, this court finds that petitioner cannot establish that the jury's verdict would have been different had Dedra Dixon's and Michelle Brown's purported testimony, offering substantially the same defense as the testimony of the rejected witnesses, been presented at trial.  Without such a showing, counsel cannot be said to have rendered ineffective assistance at trial. Thus, petitioner fails to show that the Louisiana Courts' decisions amounted to an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  This claim is meritless.

## **Prosecutorial Misconduct**

Petitioner claims that he was denied his right to a fair and impartial trial because the prosecutor harassed defense witnesses throughout the trial.  He claims that the prosecutor threatened Everett Harris while he was in the hallway by telling Harris to remember that he was the guy that prosecuted me in my case; "don't forget about that."  (See State Record, Vol. 2 of 4, Transcript of Trial, page 189, hereinafter T ____.)  On cross-examination, petitioner claims that the prosecutor prejudiced the defense by asking  Harris... "You weren't Christian when you had that rock in your hand, did you?" (T. 191-192.)  Harris stated that he was presently facing criminal charges and that he had previously been convicted of possession of marijuana with intent to distribute and of being a convicted felon with a firearm.  (T. 191.)

Petitioner also claims that the prosecutor continued his "unethical treatment" regarding defense alibi witnesses Michael North, Johnny Seymour and John Lacen.

The State argues that this claim should be dismissed based upon procedural bar. The Louisiana Court of Appeal, Fourth Circuit rejected the claim on procedural grounds as follows:

> In these assignments of error, defendant complains that the prosecutor harassed defense witnesses both inside and outside

17

the courtroom and that a mistrial should have been granted because the prosecutor improperly referred to race and religion in cross-examining the defense witnesses.  Defendant admits that no motion for a mistrial was made, but he argues that he is entitled to a new trial because the prosecutor's comments created prejudice against defendant.  Because no motion for a mistrial was requested, defendant cannot complain of any error due to the failure to request either a mistrial or an admonition.  La. C.Cr.P. arts. 770, 771, 774; **State v. Chambers**, 95-0898 (La. App. 4 Cir. 12/28/95), 666 So.2d 716, <u>writ</u> <u>denied</u> 96-1699 (La.7/30/97), 697 So.2d 593.  These assignments of error are without merit.

**State v. Weaver,** 770 So.2d 831, at 834.[17]

---

[17]        The Fourth Circuit also considered petitioner's complaints in the context of ineffective assistance of counsel, regarding the prosecutor's comments to witnesses as follows:

> The complained-of comments made by the prosecutor occurred during the cross-examination of two defense witnesses, John Lacen and Everett Harris.  Lacen was asked why the jury should believe him when he was a convicted felon; and, he replied that he had reformed his life and was a Christian.                   ...

**State v. Weaver,** 770 So.2d at 836.

> The Fourth Circuit rejected the complaint as follows:

> Although the prosecutor's remarks in question referred to the two witnesses' being Christians, it was the witnesses themselves who first brought up the fact of their being Christians.  The prosecutor's remarks do not appear to have been an attempt to create religious prejudice against defendant in the mind of the jury, but were apparently calculated to

18

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the merits of the federal claim and adequate to support that judgment. **Amos v. Scott,** 61 F.3d 333, 338 (5th Cir.), <u>cert.</u> <u>denied,</u> 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995), <u>citing</u> **Harris v. Reed,** 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. **Amos,** 61 F.3d at 338 (citations omitted). As explained in **Coleman v. Thompson,** 501 U.S. 722, 730-31, 111 S.Ct. 2546, 2554, 115 L.Ed .2d 640 (1991): "In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity.... Without the rule, ... habeas would offer state prisoners whose custody was supported by independent and adequate state grounds ... means to undermine the State's interest in enforcing its laws."

---

challenge Lacen's and Harris's claims of credibility due to their being Christians. Therefore, defendant did not receive ineffective assistance of counsel because his attorney did not move for a mistrial pursuant to Article 770(1). This assignment of error is without merit.

**See State v. Weaver,** 770 So.2d at 837.

In order to fulfill the independence requirement of the above-described doctrine, the last state court rendering a judgment in the case must "clearly and expressly" indicate that its judgment is independent of federal law and rests on a state procedural bar. **Amos,** 61 F.3d at 338; **Harris,** 489 U.S. at 263, 109 S.Ct. at 1043.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last **reasoned** state court opinion.  **Ylst v. Nunnemaker,** 501 U.S. 797, 802, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991) (emphasis added).

In the instant matter, the Louisiana Court of Appeal, Fourth Circuit issued the last reasoned opinion with respect to the issue presently before this court.  The state appellate court, rather than addressing the merits of this claim, specifically determined that the claim was procedurally barred from appellate review due to petitioner's failure to move for a mistrial or for an admonition.  Based upon the court's explicitness, it is clear that the "independent" requirement has been satisfied.

The state procedural ground or requirement relied upon by the Louisiana Court of Appeal, Fourth Circuit in dismissing the instant claim must also be "adequate".  An "adequate" ground is "one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims."  **Glover v. Cain,** 128 F.3d 900, 902

(5th Cir. 1997), citing **Amos,** 61 F.3d at 339.   A state procedural ground enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief.  **Id.,** citing **Lott v. Hargett,** 80 F.3d 161, 165 (5th Cir. 1996). The burden is on petitioner to establish that the state ground or requirement relied upon to deny his or her claims is not strictly and regularly followed.  See **Chester v. Cain,** 2001 WL 1231660, *6 (E.D. La. 2001),  citing **Martin v. Maxey,** 98 F.3d 844, 847 (5th Cir. 1996) (additional citation omitted).

        In this case, petitioner has provided no evidence to suggest nor has he even argued that the pertinent state procedural requirement, pursuant to which the Louisiana Fourth Circuit dismissed his claim, has not been strictly or regularly followed.  Accordingly, the court finds that the procedural bar relied upon by the state appellate court to deny the instant claim constitutes an "independent" and "adequate" state law ground.  As such, federal habeas review of this issue is barred absent a showing by petitioner of "cause" for failing to comply with the state procedural requirement and "actual prejudice" if a federal review on the merits is not undertaken.  As the Supreme Court explained in **Dretke v. Haley,** 541 U.S. 386, 393, 124 S.Ct. 1847, 1852, 158 L.Ed.2d 659 (2004):

> [W]hile an adequate and independent state procedural disposition strips this Court of certiorari jurisdiction to review a state court's judgment, it provides only a strong prudential reason, grounded in "considerations of comity and concerns for the orderly administration of justice," not to pass upon a defaulted

constitutional claim presented for federal habeas review. **Francis v. Henderson,** 425 U.S. 536, 538-539, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); see also **Fay v. Noia,** 372 U.S. 391, 399, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) ("[T]he doctrine under which state procedural defaults are held to constitute an adequate and independent state law ground barring direct Supreme Court review is not to be extended to limit the power granted the federal courts under the federal habeas statute.")  That being the case, we have recognized an equitable exception to the bar when a habeas applicant can demonstrate cause and prejudice for the procedural default....  The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that "fundamental fairness [remains] the central concern of the writ of habeas corpus." **Strickland v. Washington,** 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In the instant action, petitioner has provided no explanation as to why the instant claim was not presented in a procedurally proper manner.  As such, he has failed to establish cause for the procedural default and, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." **Martin,** 98 F.3d at 849. In **Dretke,** 541 U.S. at 393, 124 S.Ct. at 1852, the Supreme Court further observed:

The cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice.  **Murray v. Carrier,** 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), thus recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. **Id.,** at 496, 106 S.Ct. 2639; accord, **Schlup v. Delo,** 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

The burden of proving one's entitlement to equitable relief, thereby avoiding having one's claims barred from habeas review under the procedural default doctrine, falls squarely on the

22

shoulders of the habeas petitioner.  See **McCleskey v. Zant,** 499 U.S. 467, 494-495, 111
S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).  In this instance, petitioner has failed to assert an
"actual innocence" claim to defeat the procedural bar.  Moreover, to the extent petitioner
could base an "actual innocence" claim on the purported yet unsupported testimony of Dedra
Dixon and Michelle Brown, for the reasons explained in the discussion regarding ineffective
assistance of counsel, petitioner fails to meet his burden.  The evidence offered in support
of a credible "actual innocence" claim is woefully inadequate.  Therefore, petitioner cannot
escape the state procedural bar which prevents federal habeas review of his prosecutorial
misconduct claim.

### Multiple Offender Adjudication

Petitioner claims that he was denied his right to due process of law because the
evidence presented was insufficient to support his adjudication as a second felony offender.
Specifically, petitioner claims that the state record does not contain evidence showing he was
advised of his rights by the district judge during his previous guilty plea.  He was represented
by an attorney at the time.  Petitioner also claims that "the record lodged in the instant case
fails to contain certified copies of the court minutes or the transcript reflecting defendant's
conviction and sentence for simple robbery, which was used as the basis for defendant's

adjudication." Review of the transcript of petitioner's testimony rendered during the multiple

bill hearing shows that his previous conviction was for simple robbery.[18]

The subject issue was addressed by the Louisiana Court of Appeal, on

petitioner's direct appeal and was found to be procedurally barred from review and meritless.

The Fourth Circuit said in pertinent part:

> In these assignments of error, defendant complains that the State
> failed to present sufficient evidence that he was a second felony
> offender. He argues that because the record does not contain
> any documentation pertaining to the predicate offense, the
> evidence was insufficient to support the multiple offender
> adjudication.
>
> There is no merit to this claim. Although the record does not
> contain any documentation pertaining to the predicate
> conviction, such documents were introduced into evidence as
> shown by the transcript of the multiple bill hearing. At the
> hearing, defendant testified that he did not recall being advised
> of his rights when he pleaded guilty to the predicate offense;
> but, he was shown the guilty plea form which defendant
> admitted he read, initialed, and signed. He also admitted that he
> understood that he was waiving his rights. After the trial court
> found that the State met its burden of proof and that defendant
> was a second felony offender, defense counsel stated that he had
> no objection. The lack of an objection to the adjudication and
> the failure to file a written response to the multiple bill as
> required by La.R.S. 15:529.1(D)(1)(b) precludes appellate
> review of defendant's claim that the documentary evidence was
> insufficient. **State v. Cossee,** 95-2218 (La. App. 4 Cir. 7/24/96),

---

[18]See State Record, Vol. 2 of 4, pages 6-7, dated June 21, 1999.

678 So.2d 72.   Because appellate review of this issue is precluded, the lack of documentation in the record is moot. These assignments of error are without merit.

**State v. Weaver,** 770 So.2d at 834-835.

As previously stated in the discussion of prosecutorial misconduct in this report, generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the merits of the federal claim and adequate to support that judgment.  **Amos v. Scott,** 61 F.3d 333, 338 (5th Cir.), <u>cert. denied</u>, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995), <u>citing</u> **Harris v. Reed,** 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).

Petitioner makes no showing that the procedural bar relied upon by the state appellate court to deny the subject claim fails to constitute an "independent" and "adequate" state law ground for denying relief.  Moreover, petitioner has failed to show cause and prejudice his failure to comply with the state procedural requirement. Additionally, no credible showing of actual innocence is offered.

Finally, to the extent petitioner is attempting to directly challenge the validity of the guilty plea for his prior conviction, petitioner would not be entitled to habeas relief. Petitioner's claim regarding his alleged inadequate **Boykinization** concerns not the conviction for which he is presently incarcerated, but rather concerns a prior conviction used

25

to enhance his present sentence.  In **Lackawanna County District Attorney v. Coss,** 532 U.S. 394, 121 S.Ct. 1567, 1570, 149 L.Ed.2d 608 (2001), the Supreme Court determined that generally, "federal postconviction relief is [not] available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody."   The Court explained:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid....  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

This subject issue has no merit.

### Excessive Sentence

Petitioner claims that his sentence, although within the statutory limits, is excessive considering the facts of this case.  Petitioner concedes that he received the minimum sentence of 49 ½ years of imprisonment, however, he still argues that it was constitutionally excessive.  The trial court said that as a multiple offender or double offender under La. R.S. 15:529.1, the sentencing range was one-half the maximum or 49 ½ years to twice the maximum or 198 years.  (See State Record, Vol. 2 of 4, Transcript of Multiple Bill Hearing and Sentencing page 11, June 21, 1999.)

26

Petitioner argues that his sentence does not pass constitutional muster because he was a youthful offender, 27 years of age, he had a substance abuse problem and was the sole caretaker of three children, as his wife worked full time.  The trial judge was aware of the above mentioned history as it came out during the trial.

The state argues that this Court should not address the merits of this claim because the state appellate court denied relief based upon procedural bar, pursuant to La. C.Cr. P. art. 881.1(D), which provided that failure to file a motion for reconsideration of sentence precluded a defendant from raising any claims about his sentence on appeal.  (See **State v. Weaver,** 770 So.2d at 835.)  Again, it appears that petitioner cannot escape the state procedural bar which applies to his sentencing claim.

However, even if this court were to review petitioner's claim that his 49 ½ year sentence was unconstitutional, the Supreme Court has specifically rejected the principle that the Eighth Amendment contains a proportionality guarantee.  **Harmelin v. Michigan,** 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).[19]  If a sentence is within the statutory limits, a federal habeas court will not upset the terms of that sentence unless it is so

---

[19]In **Harmelin,** 501 U.S. at 962, 111 S.Ct. at 2684, quoting **Rummell v. Estelle,** 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980), the Supreme Court reaffirmed that "'for crimes concededly classified and classifiable as felonies, that is, punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative.'"

disproportionate to the offense as to be completely arbitrary and shocking.  **Bonner v. Henderson,** 517 F.2d 135, 136 (5th Cir. 1975); see also **Smallwood v. Johnson**, 73 F.3d 1343, 1347 (5th Cir. 1996) (emphasizing that a federal court will not review a state sentencing without a threshold showing that the sentence is "grossly disproportionate to the offense.")  In the instant matter, petitioner's 49 ½ sentence as a second-offender is in accordance with the state statutory limits.  See LSA-R.S. 15.529.1.  This fact, coupled with petitioner's criminal history, leads this Court to conclude that petitioner's 49 ½ year sentence is not excessive.  Moreover, the trial testimony shows that petitioner used a gun in robbing the victim; he was positively identified by the victim and he had the pawn ticket which described the victim's property.  Therefore the sentence is not excessive.  Petitioner is barred from bringing his excessive sentencing claim in a federal habeas proceeding based upon the procedural default noted by the state or, alternatively, his  excessive sentence claim is without merit.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Ignatius Weaver for issuance of a writ of habeas corpus under Title 28, United States Code, Section 2254 be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. **Douglass v. United Services Auto. Ass'n**, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __6th__ day of _____September_____, 2006.

_____
LOUIS MOORE, JR.
United States Magistrate Judge

29